**UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT**

| | |
|---|---|
| CRAIG TODD SCHAMBACK, | : |
|    Plaintiff, | : |
| | : |
| v. | : Civil No. 3:18CV94 (AWT) |
| | : |
| NANCY A. BERRYHILL, | : |
| ACTING COMMISSIONER OF SOCIAL | : |
| SECURITY, | : |
|    Defendant. | : |

## **ORDER AFFIRMING THE COMMISSIONER'S DECISION**

    Plaintiff Craig Todd Schamback appeals the Commissioner's final decision denying the plaintiff's application for disability insurance benefits ("DIB") pursuant to 42 U.S.C. § 405(g) of the Social Security Act ("Act").

    The plaintiff filed a motion for reversal or remand, arguing that the Administrative Law Judge ("ALJ") (1) "misinterpreted and misevaluated the evidence of record" by (a) not finding that obesity, diabetes and heart disease were "severe" impairments, and (b) by failing to properly assess the plaintiff's pain; (2) by failing to properly evaluate two medical source statements prepared by Dr. James Duran in 2016; and (3) by failing to properly formulate the plaintiff's residual functional capacity ("RFC"). Pl.'s Mem. to Reverse ("ECF No. 20-1") at 2.

The Commissioner filed a motion for an order affirming the Commissioner's decision, arguing that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's Decision.  See Def.'s Mot. to Affirm (ECF No. 24) at 1-2.

For the reasons set forth below, the court concludes that the ALJ applied the correct legal standards, and the ALJ's findings are supported by substantial evidence.  Thus, the Commissioner's final decision should be affirmed.

## **Legal Standard**

"A district court reviewing a final [] decision . . . [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C § 405(g), is performing an appellate function." Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981).  The court may not make a de novo determination of whether a plaintiff is disabled in reviewing a denial of disability benefits.  See Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching a conclusion and whether the decision is supported by substantial evidence.  See Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).

## Discussion

Section 223(d) of the Social Security Act, 42 U.S.C. § 423(d), defines disability as "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." SSR 73-7c. "[F]or purposes of meeting the statutory requirement for 'disability,' both the 'inability to engage in any substantial gainful activity' and the 'impairment' must exist at the same time and for the required 12-month period." Id.

Under Title II, a "disabling impairment(s)" "must be expected to result in death or must have lasted (or be expected to last) for at least 12 continuous months from the date of onset." SSR 82-52 (rescinded and replaced October 2, 2018, after the ALJ's Decision). "The onset date of disability is the first day an individual is disabled as defined in the Act and the regulations." SSR 83-20 (rescinded and replaced October 2, 2018, after the ALJ's Decision).

Under Title II, the onset date may be "critical" because it "may affect the period for which the individual can be paid and may even be determinative of whether the individual is entitled to or eligible for any benefits". SSR 83-20 (rescinded and

3

replaced October 2, 2018, after the ALJ's Decision).  In addition, "[a] [T]itle II worker cannot be found disabled under the Act unless insured status is also met at a time when the evidence established the presence of a disabling condition(s)."  Id.  Here, the plaintiff identified in his Title II application an onset date of September 30, 2007.  R. at 219.  The plaintiff's date last insured ("DLI") is also September 30, 2007.

At the first hearing on May 6, 2015, the ALJ who presided explained sua sponte to the plaintiff that the onset date and the date last insured were the same date, and that his claim was very specific.  See R. at 90-98.  The ALJ asked the plaintiff if he wanted to postpone the hearing to seek representation to assist in establishing an earlier onset date and to develop the record for the period before September 30, 2007.  The plaintiff requested the postponement and the hearing was continued.  See id.

On July 20, 2016, almost one year later, a different ALJ (the one who wrote the Decision) held the second hearing.  The claimant appeared with counsel.  Counsel did not propose a new onset date.  Again sua sponte, the ALJ inquired of counsel and the plaintiff regarding the claim and the evidence surrounding September 30, 2007 and two 2016 medical source statements ("MSS") introduced into evidence, one amending the other (adding

4

lumbar stenosis to cervical radiculopathy diagnoses and modifying limitations).  See R. at 40-49 (hearing transcript); R. at 1537-39 (26F 6/13/16 MSS); R. at 1548-50 (29F 7/7/16 MSS). The ALJ asked counsel to get clarification from Dr. Duran, the treating physician who produced the two 2016 MSSs, as to the basis for the amendment, and if counsel and the plaintiff determined it was best, clarification as to the basis for Dr. Duran's opinions related to cervical radiculopathy and lumbar stenosis.  See R. at 42-48.

### Severity of Obesity, Diabetes and Heart Disease

The plaintiff challenges the evaluation of the evidence. Specifically, the plaintiff argues "misinterpretation", "misevaluation", and "misstatement" of the evidence. (ECF No. 20-1 at 2, 13-14).  The plaintiff contends that the ALJ "made incorrect severity findings . . . on misstated evidence" because obesity, diabetes and heart disease were severe impairments, (ECF No. 20-1 at 13-14), and cites to evidence related to these three conditions.  See ECF No. 20-1 at 14-15.

The defendant maintains that "the ALJ's findings are well supported by substantial evidence and included an appropriate evaluation of records that post-date the DLI" (ECF No. 24 at 7), and that the plaintiff "cannot show that the impairments caused

limitations not fully considered in the ALJ's decision" (ECF No. 24 at 9).

At Step Two, an impairment is considered "severe" if it "significantly limits" the plaintiff's "ability to do basic work activities." 20 C.F.R. § 404.1520(c). "Basic work activities" is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). "Examples of these include . . . [p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling . . . ." 20 C.F.R. § 404.1521(b)(1).

"[T]he standard for a finding of severity under Step Two of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases." McIntyre v. Colvin, 758 F.3d 146, 151 (2d Cir. 2014). See also Parker-Grose v. Astrue, 462 F. App'x 16, 17 (2d Cir. 2012) (citing Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir. 1995) (citing Bowen v. Yuckert, 482 U.S. 136, 158 (1987) (O'Connor, J., concurring, joined by Stevens, J. ("'Only those [plaintiffs] with slight abnormalities that do not significantly limit any 'basic work activity' can be denied benefits without undertaking th[e] vocational analysis.'")).

"A determination that an impairment(s) is not severe requires a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its []

limiting effects . . . ." SSA 85-28. "Great care should be exercised in applying" this concept, and [i]f an adjudicator is unable to determine clearly the effects of an impairment . . . the sequential evaluation process should not end" at Step Two. Id. If an ALJ errs by concluding that an impairment is non-severe, the error would be harmless where the sequential evaluation process continued and the plaintiff's "non-severe" impairments were analyzed. See Reices-Colon v. Asture, 523 Fed. Appx. 796, 798 (2d Cir. 2013) (holding harmless any error in finding conditions non-severe where those conditions were considered with the severe impairments during the remaining steps of the sequential analysis).

Here, the ALJ wrote:

> The claimant has been diagnosed with osteoarthritis of the right knee and degenerative joint disease of the right knee (See Ex. 2F).
>
> The claimant has also been diagnosed with . . . diabetes mellitus, and coronary art[er]y disease (See Ex. 7F). However, . . . His cardiovascular system was consistently normal and his blood pressure was controlled through medication (See Ex. 4F, 7F). In 2006, the claimant's blood sugar levels were "okay" and in 2008, they were under "better control" through medication (See Ex. 7F).
>
> . . .
>
> He testified that he had a heart attack in approximately 2003.
>
> . . .

Treatment notes from Elizabeth Visone, APRN, on January 4, 2006, indicated . . . (Ex. 7F at 23) . . . On physical examination, . . . that the claimant's cardiovascular system was normal (Id.). . . . Stephen J. Leach, M.D., a primary care physician, reported . . .

. . . on July 25, 2006, that the claimant had angioplasty in 2003 and 2004, and had a nuclear perfusion study on May 1, 2006, which went very well (Id.). Dr. Leach indicated that the claimant denied any chest pain, palpitations, orthopnea, paroxysmal, or nocturnal dyspnea (Id). He reported that the claimant's blood pressure was controlled through medication (Id.). Dr. Leach indicated that the claimant's blood sugars were okay, but that he needed to lose weight so that his blood sugars and cholesterol was under better control (Id. at 19).

Progress notes from Dr. Leach on November 3, 2006, indicated that the claimant's most recent stress test was negative and he was without cardiovascular symptoms (Ex. 7F at 19). He indicated that the claimant had put on some weight and had not been paying attention to his diabetes or his diet (Id.). Dr. Leach reported that he strongly advised the claimant that he needed to be more careful with his diet (Id.).

. . .

Treatment notes from Shauna A. Rago, APRN, on February 12, 2008, indicated that the claimant was feeling much better following an upper respiratory tract infection (Ex. 7F at 10). Ms. Rago noted that the claimant was a heavy smoker, but was interested in quitting (Id.). On physical examination, she observed that the claimant was in no acute distress and had a normal cardiovascular and respiratory system (Id.).

Treatment notes from Dr. Leach on June 18, 2008, indicated that the claimant's sugars were under better control and he was continued on his

>     medication (Ex. 7F at 8). . . . On July 7, 2008,
>     Michael E. Joyce, M.D., an orthopedic surgeon,
>     examined the claimant's right knee (Ex. 4F at 1).
>     On physical examination, Dr. Joyce noted that the
>     claimant's constitution was normal, as was his
>     cardiovascular system, respiratory system,
>     peripheral vascular system, abdomen, skin, and
>     neurological system (Id. at 2).
>
>     . . .
>
>     Treatment notes from Dr. Joyce on September 24, 2008,
>     . . . reported that the claimant's strength, stability
>     tests, provocative tests, and neurovascular
>     examination were all normal as well (Id.).

R. at 16-20.

Here, the plaintiff cites to evidence related to the three impairments but does not link that evidence to corresponding limitations that significantly limited the plaintiff's ability to do the basic work activities such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling of most jobs during the period at issue.

Moreover, even if the court determined that the links existed and concluded that the ALJ erred, the error would be harmless because the ALJ identified other "severe" impairments (osteoarthritis and degenerative joint disease of the right knee) and continued with the sequential evaluation process, which included consideration of the limiting effects of both severe and non-severe impairments and a vocational analysis (see R. at 22-23).

Therefore, the plaintiff's motion to reverse or remand on this ground is being denied.

**Pain**

The plaintiff also challenges the ALJ's evaluation of the evidence with respect to pain.  Specifically, the plaintiff argues that "misstatements of evidence" led to an "erroneous evaluation" of "the quality of" the plaintiff's pain. ECF No. 20-1 at 16, 22.  The plaintiff challenges the ALJ's statement that the plaintiff testified that "his knee was not too bad" and offers evidence to support the conclusion that his pain was "significant and debilitating".  ECF No. 20-1 at 16-22.

The defendant maintains that the ALJ reasonably weighed the plaintiff's statements and that the plaintiff failed to point out any actual mischaracterization or misstatement and also failed to show that a reasonable factfinder would be compelled to weigh the evidence differently, given that the plaintiff failed to provide a link between (1) the noted evidence of pain, the plaintiff's statements about medications, and his weight, and (2) disabling limitations during the relevant period.  ECF No. 24 at 10-13.

In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, the

10

regulations require that the plaintiff's statements concerning his or her symptoms be carefully considered. 20 C.F.R. § 404.1529(c)(3).

Pursuant to 20 C.F.R. § 404.1529(c), when assessing the credibility of an individual's statements, in addition to objective medical evidence, the ALJ must consider other kinds of evidence such as information provided by medical and nonmedical sources and evidentiary inconsistencies and conflicts. The ALJ also considers the factors[1] set forth in 20 C.F.R. § 404.1529(c)(3). See Skillman v. Astrue, No. 08-CV-6481, 2010 WL 2541279, at *6 (W.D.N.Y. June 18, 2010).

"To be disabling, pain must be so severe, by itself or in combination with other impairments, to preclude any substantial gainful activity." Manzo v. Sullivan, 784 F. Supp. 1152, 1157 (D.N.J. 1991) (citing Dumas v. Schweiker, 712 F.2d 1545, 1552 (2d Cir. 1983)).

The reasons for the credibility finding "must . . . be set forth with sufficient specificity to permit intelligible plenary review of the record." Williams v. Bowen, 859 F.2d 255, 260-61 (2d

---

[1] The seven factors are: (i) daily activities, (ii) location, duration, frequency, and intensity of pain or other symptoms, (iii) precipitating and aggravating factors, (iv) type, dosage, effectiveness, and side effects of medication, (v) treatment other than medication used for relief of pain or other symptoms, (vi) any measures used to relieve pain or other symptoms, and (vii) other factors concerning functional limitations and restrictions due to pain or other symptoms. See 20 C.F.R. § 404.1529(c)(3).

Cir. 1988) (citing Carroll v. Sec'y of Health and Human Serv., 705 F.2d 638, 643 (2d Cir. 1983)).

The ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence of record." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010). The "ALJ's credibility determination is generally entitled to deference on appeal." Selian v. Astrue, 708 F.3d 409, 420 (2d Cir. 2013).

Here, the ALJ considered the plaintiff's longitudinal history, information provided by medical and nonmedical sources, evidentiary inconsistencies and conflicts, and the seven factors used to evaluate functional limitations and restrictions due to pain and other symptoms. Also, the ALJs made reasonable efforts to obtain information that would shed light on the plaintiff's impairments during the relevant period at the first and second hearings.

At the first hearing an ALJ explained, sua sponte, to the plaintiff the very specific nature of his claim and postponed the hearing at the plaintiff's request so he could seek representation to assist in establishing an earlier onset date and to develop the record for the period before September 30, 2007. Almost one year later, the ALJ, again sua sponte, inquired of counsel and the plaintiff regarding the claim and

the evidence surrounding September 30, 2007 and the two 2016 medical source statements that had been introduced into evidence. See R. at 40-49 (hearing transcript); R. at 1537-39 (26F 6/13/16 MSS); R. at 1548-50 (29F 7/7/16 MSS). The ALJ asked counsel to get clarification from Dr. Duran as to the basis for the amendment, and if counsel and the plaintiff determined it was best, clarification as to the basis for Dr. Duran's opinions related to cervical radiculopathy (a condition which appeared after the DLI) and lumbar stenosis (counsel acknowledged that Dr. Duran did not treat the plaintiff for his knee condition). See R. at 42-48.

Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence must be "more than a mere scintilla or touch of proof here and there in the record." Williams, 859 F.2d at 258. Absent legal error, this court may not set aside the decision of the Commissioner if it is supported by substantial evidence. See Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); 42 U.S.C. § 405(g)("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Thus, if the Commissioner's decision is supported by substantial

13

evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. See Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

Here the ALJ properly characterized the plaintiff's testimony regarding pain and considered the plaintiff's pain when concluding that the plaintiff retained physical, mental, and adaptive abilities that were greater than he claimed. The stabilization of symptoms with treatment and an ability to perform work within the RFC is supported by substantial evidence. The record shows that the plaintiff testified that even though he had had at least two knee surgeries, his left knee was not too bad and the right knee was okay for a little while. The medical records reflect that although the plaintiff had some osteoarthritis in his left knee in August 2007, he had a reasonable range of motion and he responded to a cortisone injection and had surgery after a finding of meniscal pathology. In July 2008, when the plaintiff was examined by Dr. Joyce, his right knee had normal contours with no quadricep muscle wasting, and the plaintiff had no pain with palpation. Doctors also noted that active forward flexion was full and there was no increased pain with deep knee flexion. Also, x-rays taken of the right knee showed no osteoarthritis in one view and only mild osteoarthritis in another view. In addition, the treatment

notes from Dr. Joyce in September 2008 state that the inspection of the plaintiff's knee was "generally normal", and while he had pain at one part of his knee, he did not have pain in any other parts of his knee.  These medical records support the ALJ's conclusion that "[i]n terms of the claimant's alleged osteoarthritis of the right knee, and degenerative joint disease of the right knee, while he did appear to have certain symptoms associated with this impairment, the claimant showed stability in his condition through treatment with his treating physicians."  R. at 20.  See also R. at 16, 21.  The claimant's activities of daily living as summarized in the decision also support the ALJ's findings.

Therefore, the plaintiff's motion to reverse or remand on this ground is also being denied.


**The Two 2016 MSSs and the RFC**

The court need not address the plaintiff's remaining arguments because his failure to link Dr. Duran's 2016 medical source statements to limitations that precluded light work for 12 months or more starting on or before September 30, 2007 makes any error in evaluating Dr. Duran's 2016 medical source statements harmless.  Also, because the plaintiff's challenge to the RFC is based on his challenge to the severity determination, the evaluation of the plaintiff's pain, and the proper

15

consideration of Dr. Duran's two 2016 medical source statements, that challenge also fails.

## Conclusion

For the reasons set forth above, Plaintiff's Motion for Order Reversing the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing (ECF No. 20) is hereby DENIED, and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 24) is hereby GRANTED.

The Clerk shall enter judgment accordingly and close this case.

It is so ordered.

Dated this 21st day of March 2019, at Hartford, Connecticut.

                                        /s/AWT
                                    Alvin W. Thompson
                         United States District Judge